UNITED STATES

v.

Charles R. SCHILLER, Jr., 491 66 1318, Private (E–1), U. S. Marine Corps.

NCM 79 1263.

U. S. Navy Court of Military Review.

Sentence Adjudged 10 May 1979.

Decided 21 Sept. 1979.

Baum, Senior Judge, filed a concurring opinion.

Before BAUM, Senior Judge, and PRICE and MICHEL, JJ.

MICHEL, Judge:

■ Appellant was charged with desertion from his unit in violation of Article 85, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885. As an aggravating matter, the Government alleged in the applicable specification that appellant was absent in desertion from this unit from 21 February 1978 to 13 April 1979. At trial, appellant pled guilty to the lesser included offense of unauthorized absence in violation of Article 86, UCMJ, 10 U.S.C. § 886. During the inquiry into the providence of appellant's guilty pleas in accordance with the mandate of *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), the military judge, upon the application of the trial counsel and with the concurrence of appellant and his defense counsel, allowed a modification to be made to the charge sheet which changed the termination date of the alleged offense to 11 April 1979. Thereafter, following ad-

ditional questioning of appellant, the military judge found appellant guilty in accordance with his pleas to the lesser included offense, which terminated on 11 April 1979, and entered those findings accordingly.[1] Subsequently, at the same Article 39(a)[2] session, the following colloquy took place:

MJ: With regard to the charge sheet that the members will be shown, do you intend, Captain [S], to use a copy of page 2 of the existing charge sheet?

TC: Yes, Your Honor, with any modifications so ordered by the court.

MJ: Do you have any objections to that, Lieutenant [O]?

DC: No objections, Your Honor.

MJ: Very well, then, gentlemen, I will inform them as to the plea and findings to that they can notate [sic] the appropriate words on the specification.

 When the officer members comprising appellant's special court-martial panel assembled they were provided, *inter alia,* with a copy of page 2 of the charge sheet which reflected the desertion allegation. The record of trial clearly indicates, through perusal of Appellate Exhibit II, that this copy was in fact utilized by the members in the course of events which led up to and included their sentencing appellant to confinement at hard labor for 5 months, forfeiture of $200.00 pay per month for 4 months, and a bad-conduct discharge.[3] After the members had been sworn, the trial counsel announced the general nature of the charge to them as being unauthorized absence:

TC: The general nature of the charge in this case is that the accused Private Charles R. SCHILLER, Jr., United States Marine Corps, "A" Company, Headquarters Battalion, Marine Corps Logistics Base, Albany, Georgia, did on or about the 21st day of February 1978, without authority, absent himself from his unit to wit: "A" Company, Headquarters Battalion, Marine Corps Logistics Base, located at Albany, Georgia, and did so remain absent until on or about 11 April 1979.

Thereafter, the military judge directed that the members examine the charge sheet which had been provided to each of them, and, when he was satisfied that they had done so, continued immediately with the *voir dire* procedure. During this phase of trial, the military judge advised the members:

MJ: . . . At an earlier session of this trial, the accused Private SCHILLER was arraigned on the charge and specification which you have before you. He pled to the charge under Article 85 not guilty; did enter a guilty plea to a specification under Article 86 of the Uniform Code of Military Justice, in that—reading now from the specification in front of you—'In that Private Charles R. SCHILLER, Jr., U. S. Marine Corps "A" Company, Headquarters Battalion, Marine Corps Logistics Base, located at Albany, Georgia, did, on or about 21 February 1978, without authority absent himself from his unit, to wit: "A" Company, Headquarters Battalion, Marine Corps Logistics Base, located at Albany, Georgia, and did re-

---

1. The military judge entered findings immediately after plea acceptance, asked trial counsel whether or not the Government would attempt to prove the greater offense, and then, after receiving a negative reply to this inquiry, entered findings a second time. Although this procedure was erroneous, *see United States v. Bryant,* 22 U.S.C.M.A. 36, 46 C.M.R. 36 (1972), under the facts here presented we perceive no prejudice to appellant.

2. 10 U.S.C. § 839(a).

3. The record of trial reveals that the following transpired subsequent to findings and before the court had assembled:

MJ: Trial Counsel, do you have copies of page 2 of the charge sheet for the president of the court?
TC: Your Honor, copies of page 2 of the charge sheet have been laid upon the members' desk.
MJ: One for each member?
TC: Yes, Your Honor, along with the convening order.
Obviously, the trial counsel had forgotten the precise content of these documents since the original charge sheet reflects, by modification, the appropriate termination of the absence and these copies do not.

main so absent until on or about 11 April 1979.'

I explained the meaning and effect of the accused's plea of guilty to him. I am satisfied that he understands that plea and I have accepted that plea. In accordance with his plea, I have found him guilty of the specification as I have just read it and a violation of Article 86 of the Uniform Code of Military Justice. The prosecution has then chosen not to introduce any further evidence, and on my own motion I necessarily then found the accused not guilty of a violation of the Uniform Code of Military Justice under Article 85 and those words which I did not read to you from that specification. Therefore, there will be no necessity for you to hear any facts in this case or to make a finding. I have accepted Private SCHILLER's guilty plea to the violation of unauthorized absence under Article 86 of the Uniform Code.

Thus, while both trial counsel and the military judge brought to the members attention the fact of appellant's guilt respecting an unauthorized absence offense, the members, while hearing the evidence and deliberating and deciding upon an appropriate sentence for appellant, had in front of them indicia of a much more serious offense. This was clearly error. *United States v. Dy,* 46 C.M.R. 521 (N.C.M.R. 1972). Under the circumstances, we are not prepared to say that trial defense counsel waived the error by failing to object. *See United States v. Heflin,* 1 M.J. 131, 133 n. 8 (C.M.A. 1975) (note text accompanying footnote 8). Because of this error, we have determined that there was fair risk of prejudice to appellant during the members' sentencing deliberations. *Cf. United States v. Moore,* 1 M.J. 940 (N.C.M.R.1976). The appropriate remedy, as we perceive it, *see Dy, supra* at 522, needed to purge the record of the ascertained prejudice, is reassessment of the sentence.

Appellant has now been convicted at two trials by court-martial. His prior sentence included a bad-conduct discharge which was suspended for one year effective 1 November 1977. Appellant's present offense was complete as of 21 February 1978, *United States v. Lovell,* 7 U.S.C.M.A. 445, 22 C.M.R. 235 (1956), well within the one-year suspension period. Upon appellant's return to military jurisdiction on 11 April 1979, the appropriate military authority could have taken steps to vacate the suspension without the necessity of further judicial proceedings. *See United States v. Bingham,* 3 M.J. 119 (C.M.A.1977) and *United States v. Rozycki,* 3 M.J. 127 (C.M.A. 1977). This was not the course of action selected. Now, this Court is faced with the task of reassessing appellant's sentence. Reassessment could not return to appellant those days already essentially wasted in incarceration. Appellant came to his present court-martial as a private and that tribunal therefore could not and did not have the authority or ability to effect reduction in rate as a sentence element. Perforce, the only sentence elements worthy of appellate action are the bad-conduct discharge and the forfeitures of pay.

As we have previously noted, appellant's suspended sentence to a bad-conduct discharge could have been vacated as of 11 April 1979. That action can still be taken. *See* paragraph 97*b, Manual for Courts-Martial, 1969 (Rev.). Cf. United States v. Pells,* 5 M.J. 380 (C.M.A.1978). Thus any action on the bad-conduct discharge element of the sentence taken by this Court would have little, if any, real impact upon appellant. Perforce, we will take corrective action with respect to the sentence element of forfeiture of appellant's pay.

This case highlights the necessity for punctilious adherence to established trial procedure and strict attention to detail[4] in all aspects of trials by court-martial. Only when military judges and practitioners at the bar of our military courts carry out

---

4. In this case the military judge should have ensured that the members were provided with a *new page 2 of the charge sheet which re*flected *only* the offense of which appellant was found guilty and which was properly before the tribunal for consideration.

their respective duties in this manner will the integrity of the military criminal justice system be ensured.

Accordingly, the findings of guilty are affirmed. Upon reassessment, only so much of the sentence as provides for confinement at hard labor for 5 months and a bad-conduct discharge is affirmed. ·

Judge PRICE concurs.

BAUM, Senior Judge (concurring):

Upon reassessment, I find a bad-conduct discharge and 5 months confinement at hard labor not inappropriate for an unauthorized absence of more than a year and, accordingly, concur in affirming that sentence.