UNITED STATES, Appellee

v

CECIL ROBERTSON, Lance Corporal, U. S. Marine Corps
and
JOHN F. THOMPSON, Private First Class, U.S. Marine Corps, Appellants

17 USCMA 604, 38 CMR 402

*Frank J. McGee, Jr., Esquire,* argued the cause for Appellants, Accused. With him on the brief was *Major L. G. Bohlen,* USMC.

*Commander Walter F. Brown,* USN, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

KILDAY, Judge:

Appellants Lance Corporal Robertson and Private First Class Thompson were arraigned, with Private First Class Guy, before a general court-martial convened at Da Nang, Republic of Vietnam, charged with rape, carnal knowledge, assault, and assault with a dangerous weapon, in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 USC §§ 920 and 928, respectively. Both entered pleas of not guilty. They were found guilty of rape and carnal knowledge and not guilty of the assault charges. Both were sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for ten years, and reduction to the pay grade of E–1. The convening authority then approved. A board of review in the office of the Judge Advocate General of the Navy, by divided opinion, set aside the findings of guilty and the sentences. However, following the grant of a Government motion for reconsideration, the board of review thereafter "disaffirmed" its decision and upon reconsideration, with one member dissenting, disapproved the finding of guilty as to rape but approved the finding of guilty as to carnal knowledge. It affirmed so much of the sentences as provided for dishonorable discharge, total forfeitures, confinement at hard labor for two years, and reduction to the pay grade of E–1. This Court thereafter granted review to consider two issues. One poses the question of whether or not the board of review erred in reconsidering its original action:

The initial board of review decision of October 27, 1967, was written by Chairman Rathbun with Member Blackburn concurring and Member Eggen dissenting. On November 1, 1967, Captain Rathbun retired. On November 6, 1967, the Government moved for reconsideration of the October 27th decision contending, in part, that the board of review erred in finding a *Miranda-Tempia* violation (Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966); United States v Tempia, 16 USCMA 629, 37 CMR 249). On November 15, 1967, Captain Kiracofe joined the board of review "for the appellate review" of this case. The board, reconstituted with Captain Kiracofe as chairman, unanimously granted the Government's motion for reconsideration. On January 11, 1968, it promulgated a decision disapproving a finding of rape but affirming carnal knowledge with a re-evaluation of the sentence as is heretofore shown. The majority opinion was authored by Captain Eggen, the original dissenter. Captain Kiracofe added a concurring opinion, while Colonel Blackburn dissented by adhering to the views expressed in his October 27th concurrence.

Counsel for the appellants now argue that Captain Kiracofe acted in this case without ever having had the benefit of two in-depth arguments presented to the board of review as initially conceived. Counsel therefore conclude that the board of review "was not duly constituted when it purported to reconsider the decision of

October 27, 1967, in that one of the members participating in the earlier decision was no longer a member of said board when the purported reconsideration was made."

In addition, the defense points out that the Judge Advocate General has not filed a certificate for review in this Court, that the time for filing has long since expired, and that there has been no action to direct a rehearing as authorized by the October 27, 1967, board of review decision. In sum, say counsel, the board of review was without legal authority to accept or reconsider Government's motion for reconsideration on or after November 1, 1967. Further, concluded the defense, there is a reasonable basis for speculating that Captain Kiracofe was added to the board of review because of his known views on a key issue in this case.

Counsel for the Government, in reply, maintain that a board of review does not lose its jurisdiction to reconsider an opinion if one of its members cannot thereafter participate by reason of death, disability, retirement, disqualification, or relief. Cf. United States v Hurt, 9 USCMA 735, 27 CMR 3. The power to reconsider is deemed inherent. Any rule to the contrary, Government argues, would be unrealistic as well as unjust for it would fail to take into account the dynamic and nonpermanent nature of board of review membership, that reconsideration is more often than not beneficial to an accused, and that any other rule would no better guard against the possibility of command influence.

Command control, maintain Government counsel, is an allegation unsupported by fact for Captain Kiracofe has been both member and chairman of this board since 1965. He has, in this case, acted on numerous motions of both parties requesting enlargement of time. Moreover, he has, in past actions on *Miranda-Tempia* issues, taken positions not inconsistent with the October board of review decision. In any event, the Government emphasizes that the motion for reconsideration was made without regard

606

to and without knowledge of Captain Rathbun's retirement.

We believe that generally, and whenever possible, an appellant should receive review of his case ▌ by a board of review constant in membership. Rohlfing v Moses Akiona, Ltd., 45 Hawaii 440, 369 P2d 114 (1962). Circumstances may, however, dictate otherwise, as in the case at hand. Normally, should such an occasion arise, jurisdiction is implicit. Thus, it is analogously said:

"A rehearing will not be granted merely because a change in the membership of the court is about to take place or has already occurred; nor will a rehearing be granted because the judge writing the majority opinion was not present or a member of the court at the time of oral argument or the submission of the cause." [5 CJS, Appeal and Error, § 1412, page 543. See also Glasser v Essaness Theater Corp., 346 Ill App 72, 104 NE2d 510 (1952), affirmed, 414 Ill 180, 111 NE2d 124 (1953).]

Suffice it to say, we find this record completely devoid of anything that suggests or smacks of command influence. In sum, we are satisfied that the board of review acted within its right when, on January 11, 1968, it reconsidered its opinion of October 27, 1967.

The remaining question to be considered is whether or not:

"THE PROSECUTION FAILED TO ESTABLISH COMPLIANCE, BEYOND A REASONABLE DOUBT, WITH THE DECISIONS OF MIRANDA V ARIZONA, 384 US 436, 86 S CT 1602, AND UNITED STATES V TEMPIA, 16 USMCA 629, 37 CMR 249."

Pertinent facts revealed that on October 24, 1966, Robertson and Thompson were members of the same unit. On this date, in company with Private First Class Guy, they proceeded to a nearby hamlet where they accosted a youthful Vietnamese female. She was thereafter carnally known— violently and over her protestations, said the victim, willingly and in re-

turn for money, contended the appellants. Thus, on November 16, 1966, Robertson, Thompson, and Guy, too, were interrogated by Marine Corps investigators in the Criminal Investigations Detachment office in Da Nang. After being advised of their Article 31 rights and being asked if "they wanted to be represented by counsel," these appellants gave statements incriminating in nature. During their court-martial, these declarations were admitted into evidence without defense objection.

Both men testified on the merits of the case at this proceeding. Robertson admitted an unsuccessful sexual attempt with an allegedly willing girl. He considered it a "business transaction." Thompson declared that he had sexual relations with the girl believing she had been paid.

As has been shown, a majority of the board of review—on reconsideration—affirmed the finding of guilty as to carnal knowledge. In so doing, one member found it unnecessary to consider the admissibility of the appellants' pretrial statements since they later took the stand and testified "to the purchase and consensual aspects of the intercourse." Thus, their convictions were considered supportable under United States v Trojanowski, 5 USCMA 305, 17 CMR 305, and United States v Tharp, 11 USCMA 467, 29 CMR 283.

The concurring member was of the opinion that "the warning rights created in *Miranda* were not fully adhered to." To him, the admission of these statements was objectionable. However, he was satisfied that the defense had knowingly consented to the admission of the pretrial statements thereby waiving any *Miranda* defects contained in the pre-interrogation warnings given the accused. Moreover, he concluded any possibility of prejudice was further removed by the judicial admissions of these appellants.

The remaining member dissented, convinced that *Miranda* requirements had not been knowingly waived. To this member, damaging in-court testimony by these appellants resulted from the introduction of illegally obtained pretrial statements.

Briefs and arguments offered in behalf of the appellants entertain the same basic concepts. Thus, counsel for the defense contend that, at the trial below, prosecution did not establish compliance with *Miranda-Tempia* requirements and further insist that a knowledgeable waiver in this case is nonexistent. In essence, they are in accord with, and in large part rely on, the original board of review holding of October 27, 1967.

Appellate Government counsel suggest that the appellants consented to the trial introduction of their extrajudicial statements, but that even in the absence of consent, the resulting error is rendered nonprejudicial by their subsequent judicial assertions.

In light of these contentions there is complete agreement that an inadequate warning was given Robertson and Thompson by Marine Corps investigators during the investigation. This much Government concedes. In this, they are eminently correct. Appellants were told that they "could be represented by counsel while I was interrogating." Omitted was the necessary advice that military counsel was available free of charge and that counsel might be present during the interrogation. United States v Hardy, 17 USCMA 100, 37 CMR 364; United States v Pearson, 17 USCMA 204, 37 CMR 468. Trial error was, therefore, created with the evidentiary introduction of these documents by prosecution. What then is the consequence?

We have heretofore subscribed to the view that all potential harm is neutralized by an appellant's judicial admission of guilt. United States v Trojanowski and United States v Tharp, both supra.

Now, however, the recent Supreme Court decision in Harrison v United States, decided June 10, 1968, 36 U.S. Law Week 4549, prohibits the use of testimonial utterances of an accused

**607**

if compelled by the use of a wrongfully procured confession. Moreover, as this Court observed in United States v Bearchild, 17 USCMA 598, 38 CMR 396, the Government is called upon to *affirmatively show* "that its illegal action did not induce this testimony." To go even further, "it must dispel the *inference* that no testimonial utterance would have been made had not prosecution already 'spread the petitioner's confessions before the jury.'"

Nonetheless, in this case Government counsel seek to apply the doctrine of waiver. Cf. United States v Gustafson, 17 USCMA 105, 37 CMR 414. In *Harrison*, the Court of Appeals relied on the fact that petitioner had "'made a conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements had been let in. . . .'" The Supreme Court said of this: "But that observation is beside the point. The question is not *whether* the petitioner made a knowing decision to testify, but *why*." (36 U.S. Law Week 4549.)

Here, defense counsel offered no objection to the admission of the erroneously procured statements. But even this does not constitute an assured waiver, for in *Harrison* the Supreme Court noted:

". . . It thus appears that, but for the use of his confessions, the petitioner might not have testified at all. But even if the petitioner would have decided to testify *whether or not* his confessions had been used, it does not follow that he would have admitted being at the scene of the crime and holding the gun when the fatal shot was fired. On the contrary, the more natural inference is that no testimonial admission so damaging would have been made if the prosecutor had not already spread the petitioner's confessions before the jury." [Emphasis supplied.] [36 U.S. Law Week 4550.]

Applied to the facts at hand, there assuredly is the "natural inference" that, had it not been for the illegally

obtained statements, these appellants would not have felt a need to give testimony judicially admitting carnal knowledge. Under these circumstances, we are not disposed to apply the doctrine of waiver. Cf. United States v Smith, 15 USCMA 416, 35 CMR 388.

In short, we conclude that in this record, as in Harrison v United States and United States v Bearchild, both supra:

"It has not been demonstrated . . . that the petitioner's testimony was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint.' Wong Sun v United States, 371 US 471, 488." [Harrison v United States, 36 U.S. Law Week 4550.]

The finding of guilty is set aside. The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The victim's testimony established rape. The accused's pretrial statements were primarily exculpatory; without them, therefore, the accused had no defense. The in-court testimony was substantially the same as the pretrial statements. Under these circumstances, I am satisfied that the accused's failure to object to the admission in evidence of the pretrial statements; their affirmative use of these statements to aid the defense; and their testimony at trial in substantial reiteration of the pretrial assertions, constitute waiver of any infirmity in the procedure by which the statements were obtained. United States v Gustafson, 17 USCMA 150, 37 CMR 414. In my opinion, therefore, the admission in evidence of the pretrial statements did not compel the accused to testify, and their testimony may be considered within the rule of United States v Trojanowski, 5 USCMA 305, 17 CMR 305. See also my dissent in United States v Bearchild, 17 USCMA 598, 38 CMR 396.