UNITED STATES, Appellant,

v.

Gregory A. KRAFFA, Lance Corporal, U. S. Marine Corps, Appellee.

No. 39,252.
NCM 79–0554.

U. S. Court of Military Appeals.

Sept. 21, 1981.

**454**

For Appellee: Captain E. A. Burnette, USMC (argued).

For Appellant: Lieutenant William C. Martucci, JAGC, USNR (argued); Commander T. C. Watson, Jr., JAGC, USN (on brief).

1. Apparently the amendment incorporated the good time credit which accused accrued during

Opinion of the Court

COOK, Judge:

In accordance with his pleas, appellant was convicted by a general court-martial, consisting of a military judge alone, of six specifications alleging the wrongful sale, possession, and transfer of marihuana, and one specification of absence without authority, in violation of Articles 92 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 886, respectively. On January 8, 1979, he was sentenced to confinement at hard labor and forfeiture of $200 pay per month for 18 months, reduction to the pay grade of E–1, and a bad-conduct discharge. The convening authority approved the findings and sentence, but directed that "[t]he sentence to confinement at hard labor and application of forfeitures will be deferred upon commencement of excess leave on 3 July 1979 until completion of appellate leave unless sooner rescinded." His action was subsequently amended to reflect the effective date of the deferment and excess leave as June 8, 1979.[1] This action complied with the following provision of a pretrial agreement:

> 5 OTHER: Upon the accused's request, the convening authority agrees to defer all confinement in excess of six months.
>
> To approve the accused's request for appellate leave and place the accused upon appellate leave upon his release from the place of post trial custody.

After announcing the adjudged sentence, the military judge examined the sentencing provisions of the pretrial agreement and entered into the following colloquy with the parties at trial:

> MJ: Now, under five other. Upon the accused's request, the Convening Authority agrees to defer all confinement in excess of six months. Now, that means that after service of six months confinement at hard labor, the Convening Authority agrees to defer the rest of the confinement, that is, not to suspend it, that is, not to remit it, but to defer it.

his period of confinement.

Do you understand what deferment of confinement means?

ACC: No, sir, I do not. I understand, sir.

MJ: You do understand what deferment of confinement is. Okay. And a final provision to approve the accused's request for appellate leave and to place the accused upon appellate leave upon his release from the place of post-trial custody. That indicates to me that after you have served your six months of confinement, the . . . [convening authority] will defer all remaining confinement at hard labor, and should a request for appellate leave be forthcoming, the accused, the Convening Authority agrees to place you upon what is called appellate leave and send you home awaiting the appellate review of the case. Do you understand?

ACC: Yes, sir.

MJ: Is my interpretation consistent with yours, Captain BREWER?

TC: It is, Your Honor.

MJ: Captain MAGNUSON?

DC: It is, Your Honor.

MJ: And you, Lance Corporal KRAFFA?

ACC: Yes, sir, it is.

In an opinion dated April 9, 1980, the United States Navy Court of Military Review held that the military judge's failure to explain the distinction between a suspension or remission of a sentence and a deferment of the sentence "prevents us from finding a provident plea," and it set aside the findings of guilty. *United States v. Kraffa*, 9 M.J. 643, 646 (N.C.M.R.1980). The court below also held that there were other deficiencies in the providency inquiry, but noted "they may not have been fatal." *Id.* at 644. Government counsel filed a motion for reconsideration. While the motion was pending before the court below, the convening authority remitted the unexecuted confinement at hard labor.[2] Subse-

quently, the court denied the Government's motion for reconsideration without opinion. The Judge Advocate General, in turn, certified the following issue to this Court:

Was the United States Navy Court of Military Review correct as a matter of law in its determination that the pleas of guilty were improvident because the military judge did not fully explain the meaning of deferment (and how deferment differs from suspension and remission) where such deficiency has been remedied by the convening authority's supplemental action ordering that all unexecuted confinement at hard labor be remitted?

■ Initially, we consider the legal consequence of the fact that the convening authority's remission action was taken after publication of the court's opinion. Our dissenting Brother concludes that the court's action expunged the findings of guilty and the sentence and, thereby, left nothing upon which the convening authority could act. A decision of the Court of Military Review, however, is not self-executing. The court issues no mandate, but its decision is forwarded to the convening authority for *further action*. See Article 66(e), UCMJ, 10 U.S.C. § 866(e); JAGMAN 0124a (3).

■ The authority of a Court of Military Review to reconsider its own decision cannot be doubted. *United States v. Reeves*, 1 U.S.C.M.A. 388, 3 C.M.R. 122 (1952); *see United States v. Sapigao*, 9 M.J. 111, 112 (C.M.A.1980) (Fletcher, J., dissenting). The absence of a mandate and the authority to reconsider results in an inchoate decision by a Court of Military Review until the possibility of reconsideration is removed. Where a motion for reconsideration has been filed the legal efficacy of the decision is effectively removed. In *United States v. Sparks*, 5 U.S.C.M.A. 453, 457–58, 18 C.M.R.

---

2. Neither the Government nor appellant has challenged the power of the convening authority to remit the confinement. Thus, we need not now decide if a deferred sentence is equivalent to a suspended sentence which may be remitted after the case is forwarded for appel-

late review. *Compare* para. 88*e with* para. 89*b* of the Manual for Courts-Martial, United States, 1969 (Revised edition), and *United States v. Shulthise*, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963).

77, 81–82 (1955), the Court analyzed the inchoate nature of a Board of Review (now Court of Military Review) decision and rejected an argument that it was equivalent to a mandate with the following remarks:

Moreover, in *Reeves*, we rejected a contention that the transmittal by a board of review of its decision to The Judge Advocate General divested that tribunal of jurisdiction. Yet that act would seem as closely similar to the issuance of its mandate by a civilian court as would the referral of the decision to the officer exercising general court-martial jurisdiction over the accused. We suspect, too, that the usual civilian mandate is to be complied with instanter by the trial court to which it is issued.

On the other hand, *no immediate action by the officer exercising general court-martial jurisdiction is contemplated* —save, of course, that involved in serving the accused with a copy of the decision. It would seem then that only at the expiration of 30 days from that event does the board's decision achieve that unqualified status which would serve, in terms of legal consequence, as an analogy to the mandate of a civilian court.[3]

(Emphasis supplied.)

■ Rule 19, Courts of Military Review Rules of Practice and Procedure, 3 M.J. CI, now provides for the time periods during which a motion for reconsideration must be filed, but the inchoate nature of a Court of Military Review decision has not changed since *Sparks*. Thus, the decision of the Court of Military Review in the present case did not void or nullify the findings and sentence. Since we perceive the convening authority's remission as an exercise of his own independent responsibilities and because there was no court mandate directed to him, his action was not an attempt to usurp the power of the appellate court.

The question before this Court, therefore, is whether the remission required a differ-ent disposition of the Government's motion for reconsideration.

■ Under any interpretation of the plea agreement, appellant could not reasonably have believed that, if the court-martial sentenced him to confinement at hard labor in excess of 6 months, the convening authority was bound to reduce the period to less than 6 months. In other words, he had to know that he was liable to serve a maximum period of confinement of 6 months. Consequently, if the convening authority, in his original action, had reduced the 18-month period adjudged by the court-martial to 6 months, appellant would have been protected against any harm from misunderstanding of the deferment provision of his plea agreement. Does it make any difference to appellant that the convening authority effected the reduction subsequent to his original action, but before the Court of Military Review acted on the Government's application for reconsideration of its decision? We are certain it does not.

In *United States v. Cooke*, 11 M.J. 257 (C.M.A.1981), this Court observed that "if the convening authority grants the same relief for which the accused thought he had contracted" in a plea agreement, there is no occasion to vacate his plea of guilty for misunderstanding of the sentence terms specified in the agreement. *Id.* at 261 (footnote omitted). Of course, *Cooke* was decided after the Court of Military Review acted in this case, but the concept of conforming judicial action to the terms of a pretrial agreement has long been recognized. *United States v. Scott*, 4 M.J. 205 (C.M.A.1978). Thus, in reviewing the original action of the convening authority, the court, itself, could have reduced the period of confinement to 6 months, and, thereby, assured appellant the benefit he believed he was entitled to under his plea agreement and render unnecessary setting aside his plea of guilty as improvident. *United States v. Scott, supra.* Alternatively, the

---

**3.** If 30 days pass after the accused is notified of the decision of the board of review and he does not petition, and no certificate is filed, the sentence may lawfully be ordered into execution. Manual for Courts-Martial, United States, 1951, paragraph 100c. A sentence to dismissal must, however, receive further action before execution. See Article 71b.

court could have remanded the case to the convening authority to determine, in his discretion, whether to conform his action to appellant's understanding of the plea agreement or to set aside the findings of guilty and the sentence to allow appellant the opportunity to be free of punishment more onerous than that for which he believed he had contracted. Either alternative was still available to the Court of Military Review when the Government requested reconsideration of the court's decision.

▇ As we observed earlier, the Court of Military Review's decision did not divest it of jurisdiction over the case. *See United States v. Robertson*, 17 U.S.C.M.A. 604, 38 C.M.R. 402 (1968). Until the Government's application was disposed of, the findings and sentence of the court-martial had not vanished from the judicial scene, leaving nothing upon which the convening authority could act. With the findings and sentence still viable, was the convening authority powerless to do anything to guarantee the benefits of the bargain the appellant may have believed he had struck? No suggestion of any legal impediment to such action appears in the pleadings or the order of the Court of Military Review. Nor do we perceive any vice in the Government's request that the Court of Military Review consider the intervening action by the convening authority in determining the merits of the request for reconsideration of the court's original decision. In *Thorpe v. Housing Authority*, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967), and 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), a tenant in a public housing project disputed eviction. After granting *certiorari*, the United States Supreme Court remanded the case to the North Carolina Supreme Court to allow consideration of a new circular on eviction issued by the Department of Housing and Urban Development.

▇ Certainly, under the original decision of the Court of Military Review, appellant would have had the opportunity to change his plea, even if the question of whether there had been a sufficient meeting of the minds on the confinement provision to protect him against a longer period of confinement at a rehearing would not have been resolved. *Cf. United States v. Lanzer*, 3 M.J. 60 (C.M.A.1977). The action taken by the convening authority removed the doubt; it gave the appellant what he would have received under the most favorable interpretation of his plea agreement. Informed of that action, the Court of Military Review was not bound to rely upon this Court to conform its earlier decision to the facts, but could, itself, effect the requisite modification. We are impelled, therefore, to answer the certified question in the negative.

In its initial review, the Court of Military Review perceived other deficiencies in the trial judge's inquiry into appellant's understanding of the terms of his plea agreement. The court did not indicate whether it deemed these deficiencies sufficient to warrant invalidation of the plea of guilty, and the Judge Advocate General has not asked that we review them. As the record must, in any event, be remanded to the court below, we express no opinion on that subject.

The decision of the United States Navy Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the Court of Military Review for further proceedings consistent with this opinion.

Chief Judge EVERETT concurs.

FLETCHER, Judge (dissenting):

Footnoting, without revisiting, the legislative history of article 67(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2),[1] I pass, as the crow flies, to the question posited with this Court by the Judge Advocate General of the Navy, namely:

---

1. *United States v. Redding*, 11 M.J. 100, 113 (C.M.A.1981), (Fletcher, J., dissenting), and

that dissent's stepchildren.

Was the United States Navy Court of Military Review correct as a matter of law in its determination that the pleas of guilty were improvident because the military judge did not fully explain the meaning of deferment (and how deferment differs from suspension and remission) *where such deficiency has been remedied by the convening authority's supplemental action* ordering that all unexecuted confinement at hard labor be remitted?

(Emphasis added.) The question should be answered in the affirmative.

A more detailed procedural history of this case than that provided by the majority is necessary to illuminate the reasons for my conclusion. On April 9, 1980, the United States Navy Court of Military Review determined that the pleas of guilty in this case were improvident, and that court set aside the findings of guilty and the sentence and authorized a rehearing. *United States v. Kraffa*, 9 M.J. 643 (N.C.M.R.1980); *see* Article 66(c) and (d), UCMJ, 10 U.S.C. § 866(c) and (d). The Judge Advocate General at that time did not certify this decision to the Court under Article 67(b)(2). Instead, on April 15, 1980, and in accordance with Article 66(e), UCMJ, 10 U.S.C. § 866(e), the Judge Advocate General sent a letter of instruction to the general court-martial convening authority informing him of the above order of the Court of Military Review and of his duty to take action not inconsistent with it. In particular, the letter of the Judge Advocate General stated:

> By decision of the U. S. Navy Court of Military Review dated 9 April 1980, the findings of guilty have been set aside. A rehearing is authorized.
>
> \*    \*    \*    \*    \*    \*
>
> If you ... determine that a rehearing is impracticable, an appropriate action should be prepared dismissing the charge(s) and restoring all rights, privileges and property to the accused.

Later, on April 21, 1980, government counsel in this case requested the Court of Military Review to grant an enlargement of time to file a motion for reconsideration of its decision. *See* Rules 19(b) and (c), and 22, Courts of Military Review Rules of Practice and Procedure, 3 M.J. CI, CII. On April 30, 1980, that court granted this motion. Subsequently, on May 1, 1980, the convening authority, Commanding General, 1st Marine Division (Rein), FMF, Camp Pendleton, California, issued a supplementary court-martial order in the case purporting to remit the unexecuted portion of confinement. Article 74, UCMJ, 10 U.S.C. § 874. Service of this confinement had been originally deferred by the convening authority in his previous actions in this case. Article 57(d), UCMJ, 10 U.S.C. § 857(d).

On May 5, 1980, the Government filed its petition for reconsideration and a copy of the convening authority's supplemental action with the Court of Military Review. This petition for reconsideration and the earlier motion for enlargement of time are not included in the papers before this Court. In any event, the Court of Military Review denied the petition for reconsideration on May 13, 1980. The Judge Advocate General, as indicated above, certified this case for our review on May 30, 1980.

The majority opinion states that the issue to be decided is "whether the remission" action taken by the convening authority after the publication of the lower court's opinion "required a different disposition of the Government's motion for reconsideration." The majority opines that if the lower court resolved this issue on the basis that the accused misunderstood a term of the agreement which cannot now prejudice him, the denial of the reconsideration motion was improper. This presumes that the convening authority's supplemental action was lawful. I disagree with such a short-sighted analysis of this question and the disrespect it engenders for both the Court of Military Review and the Judge Advocate General.

My first observation is that the findings of guilty and the sentence were already set aside before the convening authority attempted to remit the unexecuted portion of confinement. Article 66(d) provides that

the Court of Military Review can set aside findings of guilty and the sentence. That court's rules,[2] however, do not provide for a period of time before its decisions become effective by mandate (*cf.* Rule 45, Court of Military Appeals Rules of Practice and Procedure, 4 M.J. CXXI), nor do they provide for an automatic stay of their orders by filing a petition for reconsideration. *See* Fed.R.App.P. 41. In any event, the Judge Advocate General had already instructed the convening authority to comply with the Court of Military Review's action before the Government's time-enlargement motion was filed in this case. *See United States v. Tanner*, 3 M.J. 924 (A.C.M.R.1977), *pet. denied*, 4 M.J. 169 (C.M.A.1977). Under these circumstances, the findings of guilty and the sentence were effectively set aside not only before the convening authority acted but also before the Government submitted its time-enlargement motion. *See Enzor v. United States*, 42 C.M.R. 699 (A.C.M.R. 1970), *pet. denied by opinion*, 20 U.S.C.M.A. 257, 43 C.M.R. 97 (1971). T  convening authority was not authorized by any statute or by the Court of Military Review to withdraw the April 9, 1980, decision in order to revive the trial court's sentence and exercise his remission powers. *See United States v. Brandt*, 3 M.J. 959 (N.C.M.R.1977). In view of this clean slate, there were no findings of guilty or sentence for the convening authority to approve under Article 64, 10 U.S.C.A. § 864, or remit under Article 74. Accordingly, his particular supplemental action was unlawful. *See Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

The majority's reliance on *United States v. Sparks*, 5 U.S.C.M.A. 453, 18 C.M.R. 77 (1955), to support a contrary conclusion in the present case is sorely misplaced. There, a Board of Review *affirmed* findings of guilty and the sentence. The Judge Advocate General transmitted this decision to the officer exercising general court-martial jurisdiction over the accused for *service* of that decision on the accused in accordance

with paragraph 100*c*, Manual for Courts-Martial, United States, 1951. In view of the accused's right to petition this Court under Article 67(b)(3), neither this officer nor the convening authority could take any other action on the case for thirty days. *Id.* This Court held that such transmittal action did not amount to a mandate terminating the lower court's jurisdiction to entertain a petition for reconsideration from the accused because no immediate action by the officer exercising general court-martial jurisdiction was contemplated, save serving the accused with a copy of the decision. *United States v. Sparks, supra* at 458, 18 C.M.R. at 82.

The present case is significantly different. Here, the Court of Military Review set aside the findings of guilty and the sentence and the Judge Advocate General transmitted this decision to the convening authority to take action in accordance with it. Article 66(e). The action contemplated was ordering a rehearing or dismissal of the outstanding criminal charges, not notification of the accused as in the *Sparks* case. *See* Appendix 15*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). Paragraph 100*b* of the 1969 Manual, which explains this action, does not authorize a thirty-day waiting period before the convening authority may act, as did paragraph 100*c* of the 1951 Manual, the operative provision in the *Sparks* case. Moreover, neither paragraph 100*b*, *supra*, JAGMAN 0133, nor the intermediate appellate court's rules provide for service of the accused with such a decision. Accordingly, immediate action to implement the decision was demanded from the convening authority, and this order can be considered tantamount to a mandate in the absence of a particular rule of the court to the contrary. *See United States v. Sell*, 3 U.S.C.M.A. 202, 205, 11 C.M.R. 202, 205 (1953), citing *United States v. Reeves*, 1 U.S.C.M.A. 388, 3 C.M.R. 122 (1952). Even assuming that JAGMAN 124a (3) would lawfully permit the convening

---

**2.** This is the responsibility of the Judge Advocates General under Article 66(f), Uniform  Code of Military Justice, 10 U.S.C. § 866(f).

authority thirty days to take this action, such a supplementary court-martial order is not necessary to the validity of the decisions of the appellate court and the Judge Advocate General. *See* para. 90 of the 1969 Manual.

My second point of consternation is that the convening authority's action did not comply with the orders of the lower appellate court or the Judge Advocate General. *See generally Dilley v. Alexander,* 627 F.2d 407 (D.C. Cir. 1980); *City of Cleveland, Ohio v. Federal Power Commission,* 561 F.2d 344 (D.C. Cir. 1977). They expressly ordered a rehearing on findings and sentence, or dismissal of the charges. The subsequent action of the convening authority ignored these lawful options. Instead, he unilaterally[3] decided to provide his own relief under Article 74. The Navy Court of Military Review is clearly authorized to determine whether its orders have been complied with and take appropriate action in the case of noncompliance. *See United*

*States v. Hawkins,* 11 M.J. 4, 6 (C.M.A. 1981). Again, the convening authority's supplemental action was unlawful.

In view of the above, there were sound legal grounds for the Court of Military Review to deny this reconsideration petition. It clearly could have reasoned that the supplemental action of the convening authority was ineffective to alter the status quo of the case it recently decided. *See United States v. Sparks, supra* at 459, 18 C.M.R. at 83. The majority opinion in this case demonstrates once again the recent proclivity of the majority of this Court to undermine the authority of and respect for the military courts empowered by Congress to act within the military community. What the majority did to the trial bench in *United States v. Redding,* 11 M.J. 100 (C.M.A. 1981),[4] it does now to the intermediate military appellate court, thus compounding its felony.

I dissent.[5]

3. The papers concerning the Government's motion for enlargement and its petition for reconsideration before the lower court are not before us. Appellee's counsel in his brief before this Court alleged, based on these papers, that the government counsel was in communication with this convening authority after the issuance of the lower court order and prior to the subsequent remission action. *See United States v. Sell,* 3 U.S.C.M.A. 202, 205, 11 C.M.R. 202, 205 (1953).

4. *See* my dissenting opinion in *United States v. Redding* at 118 (footnote omitted), where I stated:

These congressional enactments to my mind do not anticipate that the military judge shall stand powerless in the face of the deliberate

refusal of military authorities to comply with his decisions and rulings.

5. In *United States v. Robertson,* 17 U.S.C.M.A. 604, 38 C.M.R. 402 (1968), the Judge Advocate General withheld action to direct a rehearing as authorized by the Board of Review decision. In *Thorpe v. Housing Authority,* 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967), it was expressly noted that the Supreme Court of North Carolina had granted a stay of its order while application for certiorari was made to the Supreme Court. *See Thorpe v. Housing Authority,* 393 U.S. 268, 285, 89 S.Ct. 518, 528, 21 L.Ed.2d 474 (1969) (Black, J., concurring). In the present case, the Judge Advocate General took action and the Court of Military Review did not issue a stay of its order.